| .SHORTESS, C.J.
In November 1993, Louisiana State University (LSU) solicited bids for it to grant broadcast rights for its sporting events, limited to the areas outside metropolitan Baton Rouge. The successful bidder would be allowed to sell advertising during the broadcasts of LSU’s baseball, football, and basketball games and coaches’ shows. Bidders were asked to guarantee LSU a minimum annual payment of at least $400,000.00 and a percentage of gross sales in excess of the minimum of at least 40%. The agreement was to be for a three-year period beginning with the 1994 football season and terminating with the end of the 1997 baseball season, with the option to renew for two additional one-year periods. In addition to the guarantees of payments and percentages, bidders were asked to describe “other financial enhancements” they would make available to LSU during the contract term and to propose “promotional support and incentives to LSU in support of its Athletic programs.”
Four bidders submitted proposals to LSU, including Talbot and Talbot, Inc. (plaintiff), and a joint venture of Louisiana Network, Inc., and Baton Rouge Broadcasting Company, Inc. (the joint venture). Although plaintiffs bid had the highest guarantee of payments and percentages, the contract was awarded to the joint venture based on its overall package. Plaintiff sued LSU,[1] contending that this transaction was a procurement of services that state bidding laws were applicable, and that LSU had violated those laws. Plaintiff also contended LSU violated Revised Statute 38:2212(A)(l)(a), which mandates public works contracts be awarded to the “lowest responsible bidder,”[2] and Revised Statute 39:1503(C), which mandates the award of service contracts to the party whose proposal is most advantageous to the state.
The parties agreed that this case was limited to three issues: (1) whether the contract was a consulting services contract pursuant to Revised Statute 39:1484 A(17); (2) if so, was LSU arbitrary and capricious in failing to award the contract to plaintiff; and (3) if LSU was arbitrary and capricious, the amount of plaintiffs damages. Prior to trial, the trial court ruled the bid was subject to the state procurement code, and the case was tried solely on the issues of whether LSU was arbitrary and capricious and the amount |aof plaintiffs damages.[3] The trial court found LSU acted *977 arbitrarily and capriciously in awarding the contract to the joint venture and awarded damages to plaintiff of $376,-, 319.00. Defendant appealed, contending the bid was not subject to the procurement code. Plaintiff answered the appeal, contending the damages were insufficient.
The threshold issue in this case is whether a contract for the right to broadcast LSU sporting events and sell advertising during those broadcasts is a consulting service contract pursuant to Revised Statute 39:1484 A(17). That statute defines “procurement” as
the purchasing, buying, or otherwise obtaining of any professional, personal, consulting, or social service, or any combination of these services. It also includes all functions that pertain to the obtaining of any professional, personal, consulting, or social service, including description of requirements, selection and solicitation of sources, preparation, award of contract, and all phases of contract administration.
“Consulting service” is further defined in Revised Statute 39:1484 A(4)(a) as
work, other than professional, personal, or social service, rendered by either individuals or firms who possess specialized knowledge, experience, and expertise to investigate assigned problems or projects and to provide counsel, review, design, development, analysis, or advice in formulating or implementing pro-, grams or services; or improvements in programs or services, including but not limited to such areas as management, personnel, finance, accounting, planning, data processing, and advertising contracts, except for printing associated therewith.
The record did not contain the trial court’s reasons for its decision that this contract was subject to the procurement code, if there were any. Plaintiff contends that under this contract, LSU obtained the services of a consultant to provide advice in formulating advertising contracts. LSU contends, however, that the contract was a sale of broadcast rights.
We find no evidence in the record that LSU wanted, needed, or obtained any “advice” on advertising pursuant to this contract. Instead, the successful bidder obtained the right to broadcast LSU sporting events and the concomitant right to sell advertising during those broadcasts. LSU did not pay the successful bidder, as one would expect if it had hired a consultant. Instead, the successful bidder agreed to pay 14LSU. The introductory statute to the chapter on professional, personal, consulting, and social services procurement, Revised Statute 39:1482(A), states that “this Chapter shall apply to every expenditure of public funds.” No public funds are expended under this contract. Furthermore, this contract meets the requirements of a sale under Louisiana Civil Code article 2439: the transfer of ownership of a thing (the right to broadcast LSU sporting events and sell advertising for those broadcasts) for a price in money (the guaranteed minimum payments and percentages), perfected by the consent of the parties.
For the foregoing reasons, we find the contract in question was a sale of broadcast rights and not a contract for services. Thus, the trial court committed legal error in finding that the' provisions of the procurement code applied, and its judgment in favor of plaintiff must be reversed.[4] Judgment is , hereby rendered in favor of defendant, dismissing plaintiffs suit at plaintiffs cost.
REVERSED AND RENDERED.

. Plaintiff named both LSU and The Board of Supervisors of Louisiana Slate University and Agricultural and Mechanical College as defendants. The Board answered on behalf of itself and LSU but stated the Board was the only proper party defendant. Hereinafter, defendant is referred to simply as "LSU.”

. Plaintiff originally sought to enjoin LSU from awarding the contract to the joint venture, but by the time of the pretrial conference, plaintiff sought only damages.

. The procedural method used by the court to make this determination is unclear from the record. Plaintiff states in brief that the parties agreed to submit memoranda to the court on the issue. LSU states in brief that it filed a motion for partial summary judgment. The minute entry of November 24, 1997, states the court heard cross motions for summary judgment, granting plaintiffs and denying LSU’s. There is no motion for summary judgment by plaintiff in the record. Nor is the court's decision on this issue in the record. In any event, the parties agreed at the start of the trial that the court had issued a "preliminary ruling” that the procurement code applied.

. All remaining assignments of error and plaintiffs answer to the appeal are thereby rendered moot.